**DYNCORP, Plaintiff–Appellant,**

v.

**Jorge CARNICERO, Defendant–Appellee.**

**No. 92–2221.**

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1993.

Decided June 16, 1993.

Stephen William Robinson, McGuire, Woods, Battle & Boothe, Washington, DC, argued, (John F. Anderson, on brief), for plaintiff-appellant.

Robert Anthony Hill, Minneapolis, MN, argued, (Richard G. Mann, Jr., Watt, Tieder, Killian & Hoffar, McLean, VA, on brief), for defendant-appellee.

Before WILKINS and LUTTIG, Circuit Judges, and KISER, United States District Judge for the Western District of Virginia, sitting by designation.

## OPINION

LUTTIG, Circuit Judge:

Appellant, Dyncorp, sought a declaratory judgment that its employment contract with appellee, Jorge Carnicero, did not require it to pay him as a consultant for more than five years. The United States District Court for the Eastern District of Virginia granted Carnicero's motion for summary judgment, holding that Dyncorp could not give notice of termination until after five years had elapsed and compelling Dyncorp to pay Carnicero for at least a sixth year. Dyncorp appeals, arguing that the district court erred in its construction of the employment contract. We agree, and therefore reverse.

### I.

Dyncorp hired Carnicero as its chairman of the board on September 13, 1963. The employment contract, as amended in November 1965, included the following provision:

*The Company covenants and agrees to and does hereby employ Carnicero and Carnicero does hereby accept employment, (i) as Chairman of the Board of the Company for as long a period as Carnicero shall be elected as such, except that at the discretion of the Company Carnicero agrees to remain in the employ of the Company in an executive capacity of a top managerial nature until 3 November 1967 in the event his tenure as Chairman of the Board ends prior to that date, and (ii) upon the termination of Carnicero's services,* then *as advisor and consultant to the Company for a period of five years from the time of such date or such termination* as the case may be *and thereafter on a year-to-year basis terminable at any time:* (a) *by the Company on one year's prior written notice to Carnicero or, in lieu of such notice and at the option of the Company, by the payment of one year's salary to Carnicero,* exclusive of any bonus or additional compensation, or (b) by Carn-

icero on three month's prior written notice to the Company.

J.A. at 93 (emphases added). Carnicero resigned as chairman on March 31, 1988, and he began serving as an advisor and consultant. On February 28, 1992—four years later—Dyncorp gave written notice to Carnicero that it would not extend his employment as an advisor and consultant beyond March 31, 1993. When Carnicero disagreed with this interpretation of the employment contract, Dyncorp filed the instant declaratory judgment action. From the bench, the district court granted Carnicero's motion for summary judgment. *Id.* at 112–15. This appeal followed.

## II.

■ The question before this court is whether Dyncorp could terminate its contract with Carnicero on March 31, 1993 without paying him an additional year's salary. We conclude that the unambiguous language of the employment contract answers that question in the affirmative. Under the provision at issue, Dyncorp agreed to retain Carnicero as a consultant for a minimum term of five years, "and thereafter on a year-to-year basis," which Dyncorp could terminate "at any time" in either of two ways: by giving Carnicero "one year's prior written notice" or by giving him no notice but paying him "one year's salary." *Id.* at 93. The five-year period expired on March 31, 1993—the date on which Dyncorp sought to terminate its relationship with Carnicero. No year-to-year extension occurred on that date because Dyncorp had provided written notice of termination one year earlier. Nothing in the language of the employment contract required Dyncorp to retain Carnicero's services beyond that date or to compensate him for more than his five years of service.

The district court overlooked this straightforward construction by framing the question as whether Dyncorp could invoke the notice-of-termination provisions before the expiration of the five-year term. *See id.* at 113–15. Because the notice provisions apply *only* to the year-to-year extensions and not to the minimum five-year term, the court concluded, Dyncorp could not give notice of termi-

nation until those extensions had begun—after five years had elapsed. *Id.* at 115.

We agree with the district court's premise that only the "year-to-year basis" is "terminable at any time" by one year's prior written notice (or by one year's salary in lieu of notice), while the five-year term is not "terminable at any time" but rather terminates automatically at the end of five years. *See id.* at 93. We disagree, however, with the district court's conclusion. That the termination language applies only to the year-to-year extensions does not mean, as the district court evidently assumed, that the parties must wait until those extensions have already begun to invoke that language. The year-to-year extensions are "terminable *at any time,*" *id.* (emphasis added), not terminable only after the elapse of five years. Dyncorp, therefore, could terminate the year-to-year extensions at any time during the first five years, and did so, preventing even a single one-year extension.

Carnicero offers two principal replies to this construction. First, he suggests that by providing for year-to-year extensions beyond the minimum five-year term, the parties must have anticipated at least a sixth year of salary for him. Otherwise, he argues, the year-to-year language would have been "aimless." We disagree. The language in question simply represents a default rule to govern the relationship between the parties if neither party has given notice of termination within the first five years. Dyncorp "covenant[ed] and agree[d] to and [did] hereby employ Carnicero ... as advisor and consultant to the Company ... on a year-to-year basis terminable at any time" with the appropriate notice or payment. Carnicero's five-year term, therefore, would have been followed immediately by a one-year extension if Dyncorp had not given one year's prior written notice (or paid one year's salary in lieu of notice). Because Dyncorp did, however, give such notice, it prevented the commencement of the year-to-year extensions.

Second, Carnicero contends that to allow Dyncorp to give notice of termination before five years had passed would be to allow Dyncorp to shorten the five-year minimum term. Again, we disagree. The contract

neither permitted Dyncorp to retain Carnicero for fewer than five years nor required Dyncorp to give Carnicero notice of any kind for the termination of that five-year period—the five-year period was a fixed and certain term. The contract did, however, require Dyncorp to give one year's prior written notice (or payment of one year's salary in lieu of notice) to terminate the year-to-year extensions. By giving written notice on February 28, 1992, Dyncorp complied with that requirement. Only if Dyncorp had failed to give this timely notice would Carnicero have been entitled to payment of a sixth year's salary.

Our construction of the consultancy provision finds further support in the Virginia Supreme Court's construction of a strikingly similar provision. *See Mayo, Hysore & Co. v. Philadelphia Textile Mach. Co.*, 105 Va. 486, 53 S.E. 967 (1906). In *Mayo*, the defendants agreed to pay the plaintiffs $2,000 per year during the term of the contract. The disputed provision stated:

It is hereby further agreed between the parties hereto, that this agreement shall take effect on the first day of November, 1902, and shall continue for the period of eighteen months from that date, and thereafter until six months shall have elapsed after written notice shall have been received by either party of the intention of the other party to withdraw from this agreement.

53 S.E. at 967. After twelve months, the defendants gave the plaintiffs written notice of their intention to terminate payments six months later—eighteen months after the commencement of the contract. The plaintiffs disagreed with this construction, arguing that they were entitled to a minimum term of two years.

The Virginia Supreme Court agreed with the defendants. It held that the contract required only two events: six months' notice of withdrawal, and the expiration of eighteen months. *Id.* at 968. Similarly, we hold that the contract at issue imposed only two requirements on Dyncorp: one year's notice of termination (or one year's salary in lieu of notice), and the expiration of five years. The *Mayo* court rejected the plaintiffs' contention that the words "and thereafter" required the defendants to wait eighteen months before giving written notice. *Id.* at 967. Similarly, we reject Carnicero's contention that those very words required Dyncorp to wait five years before giving written notice. The *Mayo* court concluded that the plaintiffs' construction would effectively lengthen the expressly provided minimum term of eighteen months to twenty-four. *Id.* Similarly, we conclude that Carnicero's construction would effectively lengthen the expressly provided minimum term of five years of salary to six.[1]

### III.

Like the district court, we conclude that this contract is unambiguous and that this dispute is appropriately resolved without a trial and resort to extrinsic evidence. *See Schneider v. Continental Casualty Co.*, 989 F.2d 728, 732 (4th Cir.1993) ("If the text of the agreement is unambiguous, then the court is without authority to resort to extrinsic evidence in interpreting its meaning."). Unlike the district court, however, we conclude that the contract unambiguously permitted the course of action followed by Dyncorp.[2] We therefore reverse the grant of

---

1. Carnicero offers no persuasive distinction between the *Mayo* case and the one before us. He relies on the *Mayo* court's observation that "[t]he contract does not provide when notice to terminate shall be given; it is left to either party to terminate the contract at pleasure, provided the minimum duration of 18 months expressly stated therein is not diminished." *Id.*, 53 S.E. at 968. The instant contract, argues Carnicero, *does* "provide when notice to terminate shall be given": after five years. For the reasons we have outlined above, this distinction is a false one. Like the contract in *Mayo*, the contract at issue is terminable "at pleasure"—it expressly provides for termination "at any time"—*provided,* howev-

er, that "the minimum duration expressly stated therein" (here five years; in *Mayo* eighteen months) "is not diminished."

2. That we and Dyncorp on the one hand, and Carnicero and the district court, on the other hand, have adopted conflicting constructions of the provision in question does not render the contract ambiguous. "Contracts are not ambiguous merely because the parties disagree as to the meaning of the language employed by them in their agreement." *Wilson v. Holyfield*, 227 Va. 184, 313 S.E.2d 396, 398 (1984); *see also Cohan v. Thurston*, 223 Va. 523, 292 S.E.2d 45,

summary judgment for Carnicero, and remand with instructions to enter judgment for appellant Dyncorp.

**REVERSED AND REMANDED.**

46 (1982) (ambiguity must be apparent from face of contract). Nor is *Atalla v. Abdul–Baki*, 976 F.2d 189 (4th Cir.1992), to the contrary. *See id.* at 195 ("Because the parties assert conflicting interpretations on the basis of the same language, *which supports both interpretations*, it is our opinion that the contract is ambiguous...." (emphasis added)).