JERAR NISHANIAN, ET AL.

V.

VIRENDRA P. SIROHI, ET AL.

Record No. 910636

February 28, 1992

Present: All the Justices

*V. Rick Nishanian* for appellants.
*Mario A. Bezzini* for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

Jerar Nishanian and NGN Enterprises appeal from an order denying their request for an injunction. In their prayer for injunctive relief, they sought removal of four brick driveway columns, which were allegedly placed on a private road known as Akhtamar Drive by Asha and Virendra Sirohi. In this appeal, NGN and Nishanian contend that the trial court erred in failing to find that the brick columns constitute a continuing trespass on NGN's land, as well as an interference with Nishanian's easement rights to Akhtamar Drive.

The evidence before the trial court showed that NGN sold what is known as 10220 Akhtamar Drive to Asha and Virendra Sirohi. The deed described the property conveyed as:

> All of Lot 4 of the subdivision designated as 'Division of the Land of Richard Lyle' as said subdivision appears duly dedicated, platted, and recorded in Deed Book 5056 at page 455 among the land records of Fairfax County, Virginia.
>
> And being the same land acquired by NGN Enterprises, a Virginia General Partnership recorded in Deed Book 5057 at page 478 among the land records of Fairfax County, Virginia.

The deed reserved to NGN the right to grant or sell an easement which encompassed Akhtamar Drive and granted the Sirohis the use of the private road known as Akhtamar Drive in accordance with the ingress and egress easements granted within the deed. The deed further provides, "However, Akhtamar Drive itself

is not being conveyed by this sale." The record also shows that Nishanian was granted an ingress and egress easement encompassing Akhtamar Drive.

After a hearing on the merits, the trial court held that NGN and Nishanian had failed to show that the brick columns interfered with their "unhampered use of and rights to said easement road" and that they had failed to establish any basis for injunctive relief. This appeal followed.

NGN and Nishanian contend that the evidence before the trial court conclusively established NGN's ownership of Akhtamar Drive. They note that it is undisputed that the brick columns which are the subject of this dispute are situated within the 50 foot-wide easement expressly reserved to NGN in its deed to the Sirohis. Further, they argue that since that deed granted the Sirohis an express easement over Akhtamar Drive for ingress and egress purposes only, the columns constitute a material encroachment on Nishanian's easement rights, as well as a trespass upon NGN's rights as fee-simple owner of Akhtamar Drive. In response, the Sirohis argue that the record shows that they own the land in question and, therefore, that the trial court properly denied NGN's and Nishanian's request for injunctive relief.[1] We disagree with the Sirohis.

A continuing trespass may be enjoined by a court of equity. *Mobley* v. *Saponi Corporation*, 215 Va. 643, 645, 212 S.E.2d 287, 289 (1975). Similarly, injunctive relief may be awarded for the unlawful use of an easement. *Robertson* v. *Bertha Min. Co.*, 128 Va. 93, 101, 104 S.E. 832, 834 (1920). The use of an easement must be restricted to the terms and purposes on which the grant was based. *Id.* at 104, 104 S.E. at 835.

These rules protect a land owner from the accrual of a prescriptive easement. A prescriptive easement may be established on real property upon a showing of adverse use under a claim of right, a use which is exclusive, continuous and uninterrupted and occurs with the knowledge of the land owner for at least twenty years. *Martin* v. *Proctor*, 227 Va. 61, 64-65, 313 S.E.2d 659, 661 (1984); *Robertson* v. *Robertson*, 214 Va. 76, 81, 197 S.E.2d 183, 188 (1973). Further, the right to a new and different use of an

---

[1] The trial court signed two conflicting statements of facts. One version recited that NGN is the owner of the disputed property, while the other stated that the Sirohis own the property.

express easement may also be established by prescription. *See Bertha Min. Co.*, 128 Va. at 102, 104 S.E. at 835.

■ The decision whether to grant injunctive relief is a matter submitted to the chancellor's discretion and will not be disturbed on appeal unless it is plainly wrong. *Blue Ridge Poultry v. Clark*, 211 Va. 139, 144, 176 S.E.2d 323, 327 (1970).

■ We conclude that the trial court was plainly wrong in denying NGN an injunction for the removal of the brick columns. The deed from NGN to the Sirohis plainly refutes the Sirohis's claim of ownership of Akhtamar Drive. The deed grants the Sirohis an easement for ingress and egress over Akhtamar Drive, and it specifically states that "Akhtamar Drive itself is not being conveyed by this sale." The record also contains a house location survey dated October 23, 1989 which shows that the brick columns are completely located on Akhtamar Drive.

■ Additionally, we reject the Sirohis's claim that NGN never owned Akhtamar Drive. "It is axiomatic that one who claims an interest in property is estopped to deny the title of his predecessors in interest." *Raney v. Four Thirty Seven Land Co.*, 233 Va. 513, 519, 357 S.E.2d 733, 735-36 (1987) (citation omitted). Thus, the Sirohis are estopped here from claiming that they own the disputed property by virtue of their deed from NGN, while at the same time claiming that NGN never owned the land in question. *Id.*

■ Finally, the Sirohis contend, in the alternative, that the reference to "Akhtamar Drive" in their deed from NGN pertains only to the 22 foot original dirt road existing on the property. Thus, they assert that since the brick columns are not located on that 22 foot-wide strip of land, they are not located on Akhtamar Drive. This argument, however, is directly refuted by the Lyle subdivision deed which shows Akhtamar Drive as being 34 feet wide. And, as stated above, the house location survey of October 23, 1989 places the brick columns within that 34 foot-wide strip. Therefore, the record directly refutes the Sirohis's contention that the columns are not located on Akhtamar Drive.

For the reasons stated, we will reverse the judgment and remand this cause for entry of an injunction directing the Sirohis to

remove the brick columns which have been the subject of this dispute.[2]

*Reversed and remanded.*

JUSTICE WHITING, with whom JUSTICE HASSELL joins, concurring.

I join in the judgment of the Court, but I respectfully disagree with its reasons.

The granting clause conveys "fee simple title" to "[a]ll of Lot 4." A part of Akhtamar Drive passes through lot 4 and would pass to the grantees in this conveyance were it not for additional language in the deed. In this case, the Court decides whether such additional language took this part of Akhtamar Drive out of the conveyance of the fee simple.

This additional language, which follows the granting clause, is:

> The Purchasers covenant that they shall not grant easement to anyone through and over this property for egress and ingress purposes. The Purchasers, in accordance with the restrictive covenants, may use the private road known as Akhtamar Drive constructed on this property as well as on the property of others in accordance with the ingress and egress easements granted herein. *However, Akhtamar Drive itself is not being conveyed by this sale*, and the Seller maintains and reserves full right to grant or sell easement to others for the use of said road for ingress and egress purposes, and Purchasers covenant that they or their heirs, successors, administrators and/or assigns, will sign such easement documentation when demanded by the Seller.

(Emphasis added.)

Apparently, the majority holds that the emphasized clause of the above-quoted language removed Akhtamar Drive from the fee simple conveyance of the rest of lot 4. Without discussing the granting clause in the deed, the majority opinion simply describes the effect of this additional language as follows:

---

[2] Because our ruling with regard to NGN's claim is dispositive of this appeal, we do not address the merits of Nishanian's claim.

The deed from NGN to the Sirohis plainly refutes the Sirohis' claim of ownership of Akhtamar Drive. The deed grants the Sirohis an easement for ingress and egress over Akhtamar Drive, and it specifically states that "Akhtamar Drive itself is not being conveyed by this sale."

In my opinion, this holding is erroneous for a number of reasons.

The deed is ambiguous because the granting clause purportedly conveys a fee simple interest to Akhtamar Drive. Yet the language in the quoted paragraph attempts to denigrate from that conveyance either by removing the land encompassing Akhtamar Drive from the conveyance and limiting the Sirohis' rights in Akhtamar Drive to an easement, or by reserving to the grantor and other subdivision owners certain easement rights in Akhtamar Drive. These obviously inconsistent provisions create a conflict between the granting clause and the succeeding paragraph. And, where an instrument contains conflicting provisions, it is ambiguous. *Bituminous Casualty Corp.* v. *Sheets*, 239 Va. 332, 337, 389 S.E.2d 696, 699 (1990); *Goodson* v. *Capehart*, 232 Va. 232, 236, 349 S.E.2d 130, 133 (1986); *Bolling* v. *Hawthorne Coal Co.*, 197 Va. 554, 570, 90 S.E.2d 159, 170 (1955).

Accordingly, we must read the entire instrument in order to construe its ambiguous language. *Short* v. *A.H. Still Inv. Corp.*, 206 Va. 959, 963, 147 S.E.2d 99, 103 (1966). Instead of ignoring the language of the granting clause, as the majority does, I would consider it in relation to the emphasized clause that states that "Akhtamar Drive itself is not being conveyed by this sale."

In doing so, I would apply the well-settled principle that if the granting language of a deed conflicts with later language which attempts to reduce the estate granted from a fee simple interest to that of an easement, the language of the grant prevails. *Goodson*, 232 Va. at 236, 349 S.E.2d at 133. The dispositive issue in *Goodson* was essentially the same as that in this case. The granting clause in the *Goodson* deed vested a fee simple absolute in the grantee, and its preamble appeared to create a life estate in the grantee with remainder over. *Id.*

In dealing with the conflict, we said:

[W]here there is an irreconcilable conflict between the granting clause and other parts of the deed, and it is impossible to

discover with reasonable certainty the intention of the parties, the common law rule continues to apply and the granting clause prevails. 2 F. Ribble, Minor on Real Property § 1032, p. 1336-1337 (2d ed. 1928).

*Goodson* also pointed out that

[a] further consideration . . . is the legislative intent, expressed in Code § 55-11, that when land is granted without words of limitation, the grant shall be construed to convey the fee simple, or whole estate the grantor has power to convey, unless a contrary intention appears in the deed. Our decisions have long been to similar effect: the language in a deed will be construed to pass to the grantee the greatest estate which the language employed is capable of conveying. *Waskey* v. *Lewis*, 224 Va. 206, 211, 294 S.E.2d 879, 881 (1982); *Hamlin* v. *Pandapas*, 197 Va. 659, 664, 90 S.E.2d 829, 833 (1956); *Wilson* v. *Langhorne*, 102 Va. 631, 637, 47 S.E. 871, 874 (1904).

*Id*. at 237, 349 S.E.2d at 134.

Thus, should there be an irreconcilable conflict between these clauses, and the intentions of the grantor and the Sirohis could not be discovered with reasonable certainty, I would apply the common law as articulated in our previous decisions and Code § 55-11 and hold that the granting clause prevails. Therefore, I would construe the deed as a grant of fee simple title to Akhtamar Drive with a reservation of an easement therein.

Moreover, I do not think that the language relied upon by the majority expresses the "contrary intention" described in *Goodson*. Rather, I think that the language, "Akhtamar Drive itself is not being conveyed by this sale," was an inartfully expressed preamble to the statement immediately following it. That statement reserves the grantor's rights to grant additional easements over Akhtamar Drive as it extends over this property. If the grantor had reserved the fee and merely granted an easement to the Sirohis, such a statement would have been unnecessary.

Additionally, I note that the Sirohis agreed to sign "such easement documentation when demanded by the Seller." If the grantor retained the fee simple title in Akhtamar Drive, there would be no necessity for the Sirohis to sign any "such easement docu-

mentation." Thus, I do not think that a "contrary intention" to convey only an easement is shown in the deed.

Finally, I think that this ambiguous language should be construed against the grantor. *Phipps* v. *Leftwich*, 216 Va. 706, 710, 222 S.E.2d 536, 539 (1976).

However, it would not matter in this case if the Sirohis owned the land and NGN and Nishanian merely had an easement over the Sirohis' land. The erection of a permanent structure within the limits of the easement would be an act adverse to the easement *granted*, even though it did not interfere with the easement *used*. *See generally Estojak* v. *Mazsa*, 522 Pa. 353, 362-63, 562 A.2d 271, 275 (1989); *Piper* v. *Mowris*, 466 Pa. 89, 98-99, 351 A.2d 635, 640 (1976). And, if such an act continued for the statutory period, the Sirohis would acquire a right to keep the gates within the easement and, thus, diminish the easement to that extent. 1 F. Ribble, Minor on Real Property § 109.3, at 148-49 (2d ed. 1928).

Accordingly, an injunction would lie to prevent the continuing encroachment upon the easement rights reserved by the grantor for itself and the other property owners in the subdivision, and to prevent the Sirohis' adverse use from ripening into a property right.

Therefore, I would reverse and remand the case, but for the reasons stated above.