**In re Darvin Joseph WOODRUFF, Betty Sue Woodruff, Debtors.**

**MINERS EXCHANGE BANK, Plaintiff,**

v.

**Darvin J. WOODRUFF, et al., Defendants.**

**Bankruptcy No. 7–95–01595–HPB–13. Adversary No. 7–97–00002.**

United States Bankruptcy Court, W.D. Virginia, Big Stone Gap Division.

Sept. 29, 1997.

Robert T. Copeland, Copeland, Molinary & Bieger, Abingdon, VA, for Plaintiff.

Ginger J. Largen, Morefield, Kendrick, Hess & Largen, Abingdon, VA, for Debtors/Defendants.

Jo S. Widener, Bristol, VA, for Trustee.

Jeffrey A. Sturgill, Sturgill, Mullins & Kennedy, Wise, VA, for Dennis & Yvonne Bolling.

John M. Lamie, Browning, Lamie & Sharp, Abingdon, VA, for Terry & Kimberly White.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

This Adversary Proceeding arising out of Debtor's Chapter 13 case, is before the Court pursuant to a Complaint filed by Miner's Exchange Bank, ("Bank"), to compel specific performance and to reform a Deed of Trust executed by the Debtors, Darvin J. Woodruff and Betty S. Woodruff. The court has jurisdiction pursuant to 11 U.S.C. § 105.

The Debtors filed a Chapter 13 petition in this Court on August 8, 1995. The issue in this matter surrounds a chain of title to a certain parcel of Real Estate in Wise County, Virginia, (Parcel # 2), wherein the Debtors were mistakenly given the wrong deed. Under the mistaken belief that they held title to this property, the Debtors executed a Deed of Trust to the Bank. The Bank seeks an Order that the Deeds and title be corrected.

A brief history of the chain of title begins with a conveyance in 1983 from Ida Vance and Eddie Vance to Terry and Kimberly White ("Whites") of two parcels of property located in the Town of Coeburn, Wise County, Virginia. The first parcel, (Parcel # 1), is a .125 acre lot without improvements. The second parcel, which is the subject of this cause, (parcel # 2), is approximately 1/2 acre lot which has a house situated thereon. In 1986, the Whites intended to convey Parcel # 2, with the house, to Dennis and Yvonne Bolling ("Bollings"), but in fact, the Bollings actually received the Deed to Parcel # 1. However, the mistake was unnoticed at the time of the conveyance. In 1993, the Whites intended to convey Parcel # 1, without improvements, to Timothy and Robin Horn ("Horns") but in fact, the Horns received title to parcel # 2. Again, the mistake was unnoticed. In 1994, the Bollings, mistakenly believing they held legal title to parcel # 2, conveyed the property to the Debtors who then gave the Bank a Deed of Trust on the property. The net effect is that the Debtors mistakenly believed they held legal title to parcel # 2, upon which the house is located, but they actually held a Deed to parcel # 1 without the house, subject to the Deed of trust. The Horns actually held the Deed to parcel # 2 and the house. The mistake was still unnoticed at the time the Debtors flied their Chapter 13 petition in this Court and believing they had legal title to Parcel # 2 and the house, the Debtors proposed a Chapter 13 plan which stated that their house would be surrendered to the Bank. The Plan was subsequently confirmed. Subsequently, the Bank discovered that a mistake had been made in the conveyances and that the Deed of Trust was actually on Parcel # 1 instead of Parcel # 2, upon which the house is situated. The Bank urged the Debtors to execute a correction deed to correct the title so that the house could be surrendered in accordance with the Chapter 13 plan. The Debtors refuse to execute the correction deed due to the fact that there is a pending lawsuit against the Bollings in state court regarding alleged termite damage to the house. The Bollings, the trustees and the predecessors of title are willing to make the necessary correction. (*Tr.* at 8).

Pursuant to 11 U.S.C. § 105, this Court may issue an Order necessary or ap-

propriate to carry out the provision of this title. It is "elementary that courts of equity have jurisdiction to relieve parties against the consequences of mutual mistake of fact and to grant reformation of a written instrument when, because of such mistake, the instrument does not correctly state the intention and pre-existing agreement of the parties." 66 *Am Jur.2d Reformation of Instruments* § 22 (1997). In the Virginia Supreme Court case of *Boone v. Scott,* 166 Va. 644, 187 S.E. 432, 436 (Va.1936), the Court held that "a court of equity had jurisdiction to rescind a deed for a plain mistake which was material in its character and of the very substance of the transaction." *See also Miller v. Reynolds,* 216 Va. 852, 223 S.E.2d 883 (1976). Furthermore, "when such a state of facts has been proved by clear, cogent and satisfactory evidence, equity should, and will reform the instrument to make it conform to the real intent of the parties at the time it was executed." *Id.* Upon hearing, all parties represented to the Court that the facts are not in dispute and that the conveyances were mistakenly made in the deeds and that they should be corrected. However, the Debtors refuse to execute a correction deed because it may be detrimental to their state court action against the Bollings. Counsel for the Debtors represented to the Court that the Debtors do not have a dispute about the facts and that the Bank is entitled to the deed of trust against the house which they propose to surrender. (*Tr.* at 8). Counsel also represented that the Debtors would be willing to sign a correction deed with a Court Order. (*Tr.* at 9).

It appears to the Court that a mutual mistake of fact exists and that the evidence establishes that the sellers intended to sell and the buyers intended to purchase a different parcel of land than that described in the deed. Pursuant to its equitable powers, this Court may take any action necessary or appropriate to enforce or implement court orders to prevent an abuse of process. 11 U.S.C. § 105. In this case, the Debtors' plan provided for surrender of the collateral. As such, the Debtors shall execute the necessary correction deeds to clear up the mistake in the chain of title.

Accordingly, an Order will be entered directing that the Debtors execute the necessary documents to correct the mistaken deeds and title thereto and that failure to so do, the Bank has authority to liquidate and enforce its lien rights against the property; that the Debtors shall be permitted to surrender the property to the Bank, pursuant to the Chapter 13 plan, and Relief from the stay is granted to the Bank to pursue any action against the property as may be appropriate, all of which is without prejudice as to any causes of action between the parties.